**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Daniel Berg, | No. CV-26-02147-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Unknown Party, | |
| Defendant. | |

Before the Court is *pro se* Plaintiff Justin Daniel Berg's First Amended Complaint for Structural and Constitutional Redress (Doc. 6, FAC), Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 8), and numerous other motions (Docs. 9–11). For the reasons below, the Court dismisses the First Amended Complaint without leave to amend.

## I.     BACKGROUND

On September 5, 2014, a Child Support Order was entered in the Maricopa County Superior Court against Plaintiff in cause number FC2012-071580. Plaintiff characterizes this Order as an unsigned "Ghost Order" that modified his parenting time despite no petition for modification being filed, no hearing held, or no judicial findings made. (FAC at 2, 8.) This Ghost Order "functioned as the foundation of a bifurcated record system that allowed administrative actors to generate and enforce orders that did not originate from a judge." (*Id*. at 2.) Plaintiff also identifies a recent February 10, 2026 Order issued in the

same family law matter that "list[ed] an employer with which Plaintiff has had no affiliation for more than a decade." (*Id*.)

Upon reviewing the 279 documents filed in his family court matter from 2012 through 2025, Plaintiff alleges that "a substantial number of documents [] did not contain judicial signatures or [] were signed by clerical personnel. Several of these documents were treated as enforceable orders despite the absence of judicial authentication." (*Id*. at 8.) Plaintiff alleges that this forensic "Signature-Gap Analysis" of his family court docket and related "temporal anomalies" reflect a "bifurcated administrative record" in which non-judicial personnel executed judicial functions, which is generally maintained as a policy and custom of Maricopa County to receive federal incentive payments for compliance with the federal Child Support Enforcement Act, Title VI, Part D of the Social Security Act, 42 U.S.C. §§ 651–669 (1975). (*Id*. at 6.)

Plaintiff filed this action on March 30, 2026 for claims arising under RICO, 42 U.S.C. § 1983 with vague references to "qui tam," "Moody's," and 28 U.S.C. § 2284 that provide for the assembly of a three-judge district court. (*See* Doc. 1.) The Complaint identified no defendants and did not comply with the pleading requirements of the Federal and Local Rules of Civil Procedure. The Court accordingly dismissed the Complaint on those grounds and granted Plaintiff leave to amend that pleading defects. (Doc. 5.)

Plaintiff timely filed his First Amended Complaint[1] and now sues the Maricopa County Superior Court and the Arizona Administrative Office of the Courts (the "County Entities"), Maricopa County, Moody's Inc.,[2] and the following people in their individual and official capacities: District of Arizona Clerk of Court Deborah D. Lucas, Maricopa

---

[1] Plaintiff separately filed a "Memorandum of Law" in support of the First Amended Complaint (Doc. 7). To the extent Plaintiff alleges facts or other legal theories there, the Court does not consider them. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) (noting that the face of the complaint and exhibits attached thereto control the dismissal inquiry); *Kim v. Wilmington Tr. Co.*, No. 17-CV-0528-WQH-AGS, 2018 WL 11649245, at *2 (S.D. Cal. Apr. 13, 2018) ("[T]he Court cannot consider allegations that are not raised in the complaint.").

[2] Moody's is not listed as a defendant in the caption of the First Amended Complaint; rather, it is named in Plaintiff's seventh claim. (*See* FAC at 12–13.) While not clear, the Court assumes that Plaintiff refers to Moody's, as well as all others listed in the caption, when he references the "Defendants."

County Superior Court Clerk K. Summers, Maricopa County Superior Court Judges Ronda Fisk and Katherine Kraus, and Maricopa County Superior Court Commissioners Jillian Francis, Lisa Boddington, and David Keys-Nunes ("Judicial Staff").

Plaintiff asserts the following claims against all Defendants: (1) violation of § 1983[3]; (2) conspiracy to deprive civil rights in violation of 42 U.S.C. § 1985; (3) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962; and (4) a *qui tam* action arising under the False Claims Act ("FCA"), 31 U.S.C. § 3729. (FAC at 8–16.) Plaintiff also asserts a claim solely against Moody's for negligent misrepresentation and fraudulent inducement. (FAC at 12–13.) Also included in Plaintiff's First Amended Complaint is a "Motion for Appointment of Special Master," (*id*. at 16–18), which the Court construes as a form of relief demanded by Plaintiff.

**I.     CLAIMS EXCEEDING LEAVE TO AMEND**

When dismissing pleadings, Ninth Circuit courts freely grant leave to amend a pleading when justice so requires even when a party has not requested leave. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Leave must be granted after a pleading is dismissed "if it appears at all possible that the plaintiff can correct the defect." *Id*. (citation modified). "The rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant." *Id*. at 1131.

"When a court grants leave to amend with a limited scope, and moving parties would like to add claims or parties not authorized by the court's leave to amend, moving parties are required to seek leave of the court to extend the scope of the leave." *Kihagi v. City of W. Hollywood*, No. CV 14-0936 PSG (JEMx), 2015 U.S. Dist. LEXIS 200612, at *3 (C.D. Cal. Aug. 6, 2015). "Courts routinely dismiss or strike newly added claims where the addition of such claims exceeds the scope of leave to amend that was previously authorized." *McDonough v. Bidwill*, No. CV-24-00764-PHX-DWL, 2025 U.S. Dist.

---

[3] Plaintiff's first through third claims assert violations of First and Fourteenth Amendment rights by Defendants, while his fifth claim asserts that Maricopa County and the Administrative Office of the Courts violated § 1983 under a *Monell* theory of liability by maintaining the "administrative procedures associated with the state's Title IV-D program" that violated his constitutional rights. (FAC at 8–12.)

LEXIS 184864, at *13 (D. Ariz. Aug. 21, 2025); *see also Benton v. Baker Hughes*, No. CV 12-07735 MMM (MRWx), 2013 U.S. Dist. LEXIS 94988, at *8 (C.D. Cal. June 30, 2013) (collecting cases); *Kennedy v. Full Tilt Poker*, No. CV 09-07964 MMM (AGRx), 2010 U.S. Dist. LEXIS 112119, at *3 (C.D. Cal. Oct. 12, 2010) (noting that an earlier pleading was stricken in its entirety because it added new claims and defendants in violation of Rule 15); *Serpa v. SBC Telecomms., Inc.*, No. C 03-4223 MHP, 2004 U.S. Dist. LEXIS 18307, at *10 (N.D. Cal. Sep. 7, 2004) (granting a motion to strike portions of a pleading that exceeded the scope of the leave to amend).

Here, this Court dismissed Plaintiff's Complaint but granted him leave to cure his noncompliance with Federal Rules of Civil Procedure 8(a), 10, and LRCiv 7.1. The Court did not grant Plaintiff leave to add new claims. Accordingly, the Court dismisses the Count Four brought under 42 U.S.C. § 1985(3) as exceeding the bounds of the leave granted.

For cases like this one in which a party is permitted to proceed IFP, 28 U.S.C. § 1915(e)(2) provides that a district court must screen that party's complaint. *Lopez*, 203 F.3d at 1127–29. The Court now turns to this task.

## II.   IMMUNITY

First, the County Entities are government entities that can be sued only if the state legislature has granted them the power to sue or be sued. *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) ("Sovereign immunity provides that an individual may not sue a state, a division of a state, or an instrumentality/arm of a state without the state's consent."). There is no Arizona statute that confers either of the County Entities the ability to sue or be sued. *See, e.g.*, *Petramala v. Arizona*, No. CV-19-00029-PHX-DWL, 2019 WL 11027688, at *4 (D. Ariz. July 18, 2019) ("[T]he Maricopa County Superior Court is a non-jural entity; thus, it cannot be sued.") (collecting cases).

Second, it is a longstanding rule that "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *see also Mansanares v. Nothwehr*, No. CV-07-338-PHX-SRB, 2007 WL 9724692 (D. Ariz. Dec. 5, 2007) (holding

that an Arizona Superior Court Commissioner was entitled to judicial immunity). In addition to "protecting the finality of judgments" and "discouraging inappropriate collateral attacks," judicial immunity "protect[s] judicial independence by insulating judges from vexatious action prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988) (citing *Bradley v. Fished*, 80 U.S. (13 Wall.) 335, 348 (1871)). "If a state court errs in its rulings. . .  the traditional remedy has been some form of appeal," *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021), but this Court is not the proper venue for that, *see, e.g.*, *Noel v. Hall*, 341 F.3d 1148, 1154–55 (9th Cir. 2003). This immunity extends even to court clerks, who "have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." *Mullis v. U.S. Bankr. Court for the Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987). Here, the various judges, commissioners, and clerical staff were engaging in judicial acts or acts integral to the judicial process (*e.g.*, issuing, entering, and filing orders). The Judicial Staff are immune from an action for damages arising from those acts.

Sovereign immunity and common law judicial immunity both bar monetary damages and other retrospective relief, but they do not completely bar *prospective* declaratory or injunctive relief. *Arizona Students' Ass'n*, 824 F.3d at 865 (sovereign immunity); *Moore v. Urquhart*, 899 F.3d 1094, 1104 (9th Cir. 2018) (judicial immunity).

The injunctive relief Plaintiff seeks falls well outside the scope of what this Court can fashion. In short, Plaintiff demands the implementation of "technical safeguards" that would require the state courts to "include a link or reference to an explanatory resource" in court documents, authenticate judicial signatures before an order is filed, automate child support checks, issue stays of enforcement proceedings, escalate review of filings concerning child safety, and more. (FAC at 21–22.) Much of this relief is tantamount to legislation, and "[t]he judicial power cannot legislate." *State of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 440 (1855). Moreover, the Court may not issue injunctive relief against a state court unless authorized by Congress, *Mitchum v. Foster*, 407 U.S. 225, 228–30 (1972), and this Court is aware of no congressional authorization to

amend or alter a state court's procedures at all, let alone mandate a profound upheaval of them as demanded by Plaintiff.

As for declaratory relief, Plaintiff requests that the Ghost Order be declared void for lack of judicial signature,[4] hearing, and underlying petition. (FAC at 2.) That relief squarely falls within the *Rooker-Feldman* doctrine and this Court has no subject-matter jurisdiction to hear it. *Noel*, 341 F.3d at 1164 ("If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject matter jurisdiction in federal district court.").

Because the County Entities and Judicial Staff are immune from actions for retroactive relief, and Plaintiff asserts no prospective relief that is legally cognizable here, these parties are dismissed from this matter. The defects cannot be cured by additional facts, so amendment would be futile. The remaining parties are Maricopa County and Moody's, so the Court now evaluates the § 1983, RICO, and FCA claims against both and a claim of negligent misrepresentation and fraudulent inducement against Moody's.

## III.    FAILURE TO STATE A CLAIM

The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The Court is to construe a *pro se* plaintiff's complaint "liberally" and afford the plaintiff "the benefit of any doubt." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). However, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially

---

[4] The Court observes that the Ghost Order, which is attached to Plaintiff's First Amended Complaint, *is signed* by a judicial officer (FAC at 28), and Plaintiff's own "forensic analysis" of the family court docket indicates that a petition to modify the child support obligation *was* filed less than three months before the Ghost Order was issued (Doc. 6-1 at 18.) Therefore, even if Plaintiff's declaratory relief was able to proceed, his allegations that support that relief are contradicted by his pleading and are, therefore, implausible.

pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted).

Plaintiff alleges that Maricopa County maintained the "bifurcated administrative record" that violated his constitutional rights and failed to train and supervise clerical personnel. (FAC at 11–12.) While Maricopa County can be subject to suit under § 1983 for maintaining unconstitutional policies or practices, Maricopa County is part of the executive branch that is independent from, and has no power over, the judicial branch. *Id.*; *accord Mann v. County of Maricopa*, 456 P.2d 931, 935 (Ariz. 1975); *Broomfield v. Maricopa County*, 544 P.2d 1080, 1082 (Ariz. 1975). The allegedly unconstitutional policy and acts that Plaintiff complains of are judicial ones, and therefore Plaintiff fails to state "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" against Maricopa County under a *Monell* theory. *Ashcroft*, 556 U.S. at 678 (citation modified). As for Moody's, Plaintiff does not allege that it is a state actor, nor could he because Moody's is a private entity that, according to Plaintiff, ranks other entities for creditworthiness. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (citation modified).

Next, Plaintiff brings a RICO claim under 18 U.S.C. § 1962(c), which makes it illegal for any person "to conduct or participate . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt," Plaintiff fails to allege any conduct by Maricopa County or Moody's that constitutes "racketeering activity" as defined by § 1961(1)—let alone a "pattern" of activity specified in § 1961(5)—or an unlawful debt contemplated by § 1961(6). The only two specific acts alleged were two orders separated by twelve years and issued by the judicial branch to which neither Maricopa County nor Moody's belong.

Under his FCA claim, Plaintiff is required, but fails here, to plead that Maricopa County or Moody's made "a false statement" or engaged in a "fraudulent course of conduct" that was material and caused "the government to pay out money or forfeit moneys

- 7 -

due." *Kelly v. Denault*, 374 F. Supp. 3d 884, 889–90 (N.D. Cal. 2018). According to Plaintiff's allegations, the federal incentive payments were paid because of acts or statements of the state's judiciary and not Maricopa County or Moody's.[5]

As for negligent misrepresentation and fraudulent inducement that Plaintiff brings solely against Moody's, he alleges that Moody's continues to rate the State of Arizona and Maricopa County at a high creditworthiness rating despite receiving "notice" from Plaintiff about the "bifurcated administrative record" and other procedural infirmities. That "notice," which Plaintiff attaches to his pleading, is an email he sent to Moody's and others on March 11, 2026 at 7:03 p.m., to which Plaintiff received an automated message two minutes later from Moody's confirming receipt of his inquiry. (Doc. 6-1 at 24–34.) But Plaintiff fails to sufficiently plead that Moody's entered a business transaction with Plaintiff, intended for Plaintiff to rely on its creditworthiness rating, or how Plaintiff relied on that rating. *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 333, 340 P.3d 405, 412 (Ct. App. 2014); *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033 (Ariz. App. 2010) (noting that a fraudulent inducement claim requires, *inter alia*, that the speaker intends the hearer rely on a representation and the hearer so relies). Facts that, if pled, would correct this defect would simply be implausible because Plaintiff would have to allege that he *relied* on Moody's rating after it received the March 11, 2026 notice, which he clearly did not because he was the one to provide the notice.

Plaintiff fails to state a claim against Maricopa County and Moody's. For Plaintiff to cure the defect of his claims, he would have to plead facts that suggest the "bifurcated administrative record" and other policies or acts are not judicial ones (*e.g.*, ones arising from the state's executive branch or in private industry), which is plainly implausible and undermines the entire theory of his case. Accordingly, any amendment of his claims regarding Maricopa County and Moody's would be futile.

. . .

---

[5] Plaintiff's FCA claim separately fails for procedural defects under the *qui tam* provisions set forth in § 3730(b)(1). Plaintiff does not bring this action in the name of the Government and fails to give the Government notice of the action. 31 U.S.C. § 3730; *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 412 (2005).

## IV.    CONCLUSION

Upon screening Plaintiff's First Amended Complaint, the Court finds that the County Entities and Judicial Staff enjoy immunity from damages, Plaintiff fails to state any legally cognizable prospective relief to which that immunity would not reach, and Plaintiff fails to state any claim against Maricopa County and Moody's. For the reasons discussed herein, these infirmities cannot be cured by amendment, and the Court dismisses this action without leave to amend. *Lopez*, 203 F.3d at 1130. The other pending motions, including one for a temporary restraining order, are dismissed as moot.

**IT IS ORDERED** dismissing Plaintiff's First Amended Complaint for Structural and Constitutional Redress (Doc. 6) without leave to amend.

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 65; Notice of Administrative Conflict and Request for Neutral Intake; Motion for Convocation of a Three-Judge District Court; and Motion for Order Authorizing Alternative Service by Email and Deferring Traditional Service (Docs 8–11).

**IT IS FURTHER ORDERED** directing the Clerk of the Court to close this matter.

Dated this 13th day of April, 2026.

Honorable John J. Tuchi
United States District Judge

- 9 -